**In re Anonymous No. 32 D.B. 79**

Disciplinary Board Docket no. 32 D.B. 79.

KRAWITZ, *Member,* November 4, 1980— Pursuant to Pa.R.D.E. 208(d) (rules), the Disciplinary Board of the Supreme Court of Pennsylvania (board) submits its findings and recommendations to your honorable court with respect to the above proceedings.

## I. HISTORY OF PROCEEDINGS

This matter arises under a petition for discipline that was filed on September 7, 1979 alleging that respondent attorney engaged in illegal conduct involving moral turpitude (Rule 1-102(A)(3)); engaged in conduct involving dishonesty, fraud, deceit or misrepresentation (Rule 1-102(A)(4)); engaged in conduct prejudicial to the administration of justice (Rule 1-102(A)(5)); engaged in conduct that adversely reflects on his fitness to practice law (Rule 1-102(A)(6)); neglected a legal matter entrusted to him (Rule 6-101(A)(3)); intentionally failed to seek the lawful objectives of a client through reasonably available means (Rule 7-101(A)(1)); intentionally failed to carry out a contract of employment entered into with a client for professional services (Rule 7-101(A)(3)); failed to deposit in an identifiable bank account funds belonging to the client (Rule 9-102(A)); failed to maintain a complete record of the funds of the client coming into his possession and failing to render client an appropriate account of the same (Rule 9-102(B)(3)); failing to pay or deliver to client, as requested, funds in his possession to which his client was entitled to receive (Rule 9-102(B)(4)). No answer was filed and the matter was referred to a hearing committee. Evidentiary hearings in this matter were held on November 27, 1979 and December 18, 1979. Throughout this matter respondent represented himself. On June 20, 1980 the hearing committee filed its report finding that respondent engaged in conduct involving dishonesty, deceit and misrepresentaion (Rule 1-102(A)(4)); engaged in conduct prejudicial to the administration of justice (Rule 1-102(A)(5)); engaged in con-

duct that adversely reflects on his fitness to practice law (Rule 1-102(A)(6)); failed to deposit client's funds in an identifiable bank account maintained in Pennsylvania (Rule 9-102(A)); and failed to maintain complete records of all funds of his client coming into his possession and render an appropriate account to his client regarding them (Rule 9-102(B)(3)). On July 23, 1980 disciplinary counsel filed exceptions to the hearing committee's recommendation of discipline. On August 18, 1980 respondent filed a brief opposing the filed exceptions and on the same date the matter was referred to the board for review.

## II. FINDINGS OF FACT

The findings of fact and conclusions of law by the hearing committee are supported by the evidence and unanimously adopted by this board. The factual situation is herewith set forth as follows:

On or about June 11, 1977 client consulted respondent and retained him to represent him regarding his domestic relations matters, in particular a divorce action that had been instituted by client's wife.

In July 1977 an agreement was reached between the parties in the domestic matter whereby client would pay a total sum of $2,650 to client's wife and her counsel, and in exchange therefor client's wife would convey her interest in joint real estate.

Under the agreement it was understood that client's wife, through her counsel, would provide a deed to respondent for the property conveying her interest, and that respondent would hold $2,000 in escrow until a decree in divorce was entered. At that time the $2,000 in escrow would be transmitted by respondent and the deed recorded.

Pursuant to the agreement, client paid over to respondent the sum of $2,650, the sum of $650 of which was paid to counsel for client's wife.

Upon receipt of the $2,000 from client, respondent failed to place that money into an identifiable bank account or into an escrow account of any nature.

Thereafter counsel for client's wife requested of respondent, many times, information regarding the $2,000. Respondent untruthfully and for the purpose of misleading counsel for client's wife continuously advised that he had the funds in escrow. This was a continued untruth.

The master's hearing was held on the matter of client's wife versus client on July 24, 1978. The master filed his report. By letter dated August 7, 1978 counsel for client's wife advised respondent that a final decree had been forwarded to the prothonotary with a request that respondent forward to him the $2,000. Respondent then, starting with a letter dated August 9, 1978, began a period of delaying, stalling, and misleading of client's wife's counsel. The first letter requested a photocopy of the final decree in divorce with a promise of a remittance of the payment thereafter.

A final decree in divorce was entered on August 11, 1978, and a copy was forwarded by counsel for client's wife to respondent on August 15, 1978. Then additional demands were made by wife's counsel over a period of another five months.

By letter dated February 1, 1979 respondent informed wife's counsel that he "did not wish to forward a check to (him), knowing that (he) would be away." Additionally, respondent now claimed that client owed respondent additional legal fees and that he had no intention of proceeding further

without getting paid, with a request that counsel for wife help him (respondent) to collect additional fees.

On or about February 27, 1979 client paid respondent the remaining portion of fee allegedly due and owing.

By letters dated December 12, 1978, December 18, 1978, January 22, 1979, and February 2, 1979, wife's counsel demanded that respondent forward to him the $2,000 which he was supposed to be holding in escrow, but which he had previously converted to his own uses and purposes. However, respondent consistently refused or failed to forward these funds to wife's counsel and ignored his demands, although he had previously promised to do this. This was done despite the fact that all of the terms of the agreement that had originally been entered into between respondent, wife's counsel, client, and client's wife had been met.

Respondent originally refused to release the $2,000 to client's wife's attorney because respondent contended that the deed to client had not been properly acknowledged and the issue was open first as to securing a proper acknowledgment and, secondly, as to the payment of the cost of the transfer tax when the deed from husband and wife to husband had to be recorded beyond the period of 90 days after the divorce. On or about July of 1979 client was compelled to retain another attorney who filed a petition to compel respondent to relinquish the deed to client and the $2,000 to be paid to client's wife. This was necessary since at this point client's wife had threatened to bring action against client for violation of the agreement.

In accordance with the new counsel's petition, a hearing was convened on August 13, 1979, at

which time a meeting was held in chambers, and respondent advised the hearing judge that he was holding $2,000 in escrow. This statement was not true.

Following the aforementioned meeting, the new counsel, client and respondent went to respondent's office, at which time respondent prepared a check in the amount of $2,000 payable to the new counsel to be provided to client's wife. The check was presented for payment and returned unpaid there being insufficient funds in respondent's bank account to pay the same.

The following day, this check was honored and the moneys were turned over to counsel for client's wife.

### III. DISCUSSION

The record unequivocably and without contradiction establishes that respondent during the course of his representation of client, received certain funds from his client for the purpose of placing them into an escrow account for ultimate distribution to the client's wife and her attorney, but that respondent thereafter failed to deposit said funds in a separate account, failed to remit them to opposing counsel when a previous agreement warranted disbursement, engaged in a pattern of subterfuge with regard to his dealings with opposing counsel, lied to the hearing judge that he was holding $2,000 in escrow when, in fact, he had converted said funds to his own uses and purposes and finally, in payment of the said funds, delivered a check that was returned for insufficient funds conclusively proving beyond any shadow of a doubt that respondent had converted those funds to his own uses and purposes.

Respondent's conduct established violations of the disciplinary rules as heretofore set forth and established that he is unfit to practice law from the standpoint of protecting the public and the courts, that he has a total disregard for honesty and truth and that his acts of stealing escrow funds and engaging in a course of conduct evidencing many lies, misrepresentations, and deceit render him presently unfit to continue in the practice of law.

## IV. HEARING COMMITTEE ACTION

The hearing committee recommended that respondent be publicly censured.

## DISCIPLINARY BOARD RECOMMENDATION

The Disciplinary Board concurred on the findings of the hearing committee of violations of the Disciplinary Code as heretofore set forth. The Disciplinary Board adopted the hearing committee findings of fact as their own. Nevertheless the board felt that the magnitude of respondent's conduct in this matter required that the Disciplinary Board reject the recommendation of the hearing committee. Accordingly the Disciplinary Board recommends that under the circumstances of this case, a one year suspension from the practice of law is mandated, and strongly suggests that the conduct such as that engaged in by respondent dictates at least the recommended suspension. In rejecting the public censure, the board noted the two-fold purpose of disciplinary action: to protect the public and the courts from those unfit to function as attorneys and to maintain the confidence of both the public and the courts in the legal profession. The board, therefore, concluded with the recommendation of a one year suspension.

Mr. Pearlstine did not participate in the adjudication.

## ORDER

PER CURIAM, May 4, 1981—There having been entered by this court an order dated November 24, 1980, suspending respondent immediately and a rule issued upon him to show cause why he should not be disbarred from the practice of law, upon consideration of the briefs filed and oral argument presented, it is ordered that the rule be and is hereby made absolute; and it is further ordered that the said respondent be and is hereby disbarred from the practice of law and that he shall comply with Rule 217 of the Pennsylvania Rules of Disciplinary Enforcement.

See Office of Disciplinary Counsel v. Lewis, ____ Pa. ____, 426 A. 2d 1138 (1981); Office of Disciplinary Counsel v. Herman, ____ Pa. ____, 426 A. 2d 101 (1981); Office of Disciplinary Counsel v. Grigsby, ____ Pa. ____, 425 A. 2d 730 (1981).

Mr. Chief Justice O'Brien did not participate in the consideration or decision of this case.